558 F.2d 803
 15 Fair Empl.Prac.Cas. 671, 14 Empl. Prac.
Dec. P 7805
Ula CUTLIFF et al., Plaintiffs,
Kenneth Shaw, Plaintiff-Appellant,
v.
GREYHOUND LINES, INCORPORATED, a Foreign Corporation, Local
Lodge 570, International Association of Machinists and
Aerospace Workers, International Association of Machinists
and Aerospace Workers, and Max M. Daniel, Defendants-Appellees.
 No. 75-2770.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 2, 1977.
 
 Morris W. Milton, St. Petersburg, Fla., for plaintiff-appellant.
 Frank E. Hamilton, III (Rep. Local 570 et al.), Fort Lauderdale, Fla., William E. Sizemore, Tampa, Fla., for Greyhound.
 Appeal from the United States District Court for the Middle District of Florida.
 Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 Three blacks, the sole appellant Shaw and two others not parties to this appeal[1] brought action in the district court under Title 42, U.S.C. § 1981 and under Title 42, U.S.C. § 2000e-5(f), Title VII of the Civil Rights Act of 1964, as amended, jurisdiction being asserted under Title 28, U.S.C. § 1343(4).
 
 
 2
 The amended complaint sought damages and mandatory and prohibitory injunctions, charging Greyhound Lines, Inc. (Greyhound or the Company), International Association of Machinists and Aerospace Workers (the International) and Local Lodge 570, International Association of Machinists and Aerospace Workers, AFL-CIO (the Local)[2] with racial discrimination in Greyhound's St. Petersburg, Florida, facility against blacks in employment, promotion and furlough (lay-off) practices.
 
 
 3
 The trial court denied motions to dismiss the amended complaint and other pretrial motions, and held a bench trial on the issues raised by the amended complaint and the amended answers of Greyhound and the Union as merged into and restated by the Pre-trial Stipulation. The court entered judgments on the merits for each of the defendants, and filed Findings of Fact and Conclusions of Law which supported the judgments.
 
 
 4
 Both by appropriate motions and by their amended answers all defendants raised statute of limitation defenses. All were disallowed by the trial court. For reasons briefly indicated below, we conclude that both § 1981 claims were barred by the applicable Statute of Limitations. We further conclude that the court should have dismissed the Title VII claims for failure to prove subject matter jurisdiction, as urged by motions filed by all defendants at the close of the evidence. We therefore affirm the judgments below without reaching the merits.
 
 
 5
 A § 1981 claim was asserted against each defendant, while, under the issues as finally framed for trial, the § 2000e-5 violation was charged against the two Unions only.
 
 
 6
 On December 9, 1971, because of a reduction in force, Shaw was furloughed from his mechanic classification with Greyhound. He had held the classification since 1963, following since 1955 employment as a Cleaner, a lower classification. A job as mechanic was added by Greyhound in early August 1972, was opened to bids, and was awarded on August 15, 1972, to Max M. Daniel, a former white mechanic employee who had been furloughed on October 4, 1971. The position of Greyhound and the Unions at trial was that the award to Daniel was required by the collective bargaining agreement between Greyhound and the International, under the terms of which Daniel was the senior bidder.[3] The trial court's upholding of this contention was the undergirding for its decision on the merits.
 
 I. THE § 1981 CLAIMS
 
 7
 The original complaint in this action was filed October 17, 1973, alleging racial discrimination in the August 1972 denial of promotion to Shaw, both under Title VII and under § 1981.
 
 
 8
 Since Shaw had not filed charges against Greyhound with the EEOC, a jurisdictional prerequisite to an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, the Title VII claim against Greyhound was properly dismissed by the district court, as conceded here by appellant.
 
 
 9
 As § 1981 contains no statute of limitations, we have held that federal courts will follow the most "closely analogous" state limitation statute. Franks v. Bowen Transport, 495 F.2d 398 (5th Cir. 1974). We held in Johnson v. Goodyear Tire and Rubber Company, 491 F.2d 1364, 1379 (5th Cir. 1974) that Florida Statutes § 95.11(7)(b)'s[4] one year proscription was the applicable Florida limitation statute in § 1981 employment discrimination cases. As more than one year elapsed between the denial of promotion to Shaw on August 15, 1972 and the filing of suit on October 17, 1973, the § 1981 claim as to Greyhound was time-barred.[5]
 
 
 10
 The § 1981 action as to the Unions was likewise brought out of time under Fla. Statutes § 95.11(7)(b). The rule prevailing in this circuit, prior to Johnson v. American Railway Express[6] was that the timely filing of a Title VII complaint with the EEOC tolled[7] the Statute of Limitations as to a corresponding § 1981 claim. See Guerra v. Manchester Terminal Corp., 498 F.2d 641 (5th Cir. 1974); Boudreaux v. Baton Rouge Marine Contracting Co., 437 F.2d 1011 (5th Cir. 1971). But in Johnson the Supreme Court held that the statute of limitations applicable to an action under § 1981 is not tolled during the pendency of proceedings before the EEOC, since for purposes of limitation the two types of claim are separate and distinct. Johnson left unanswered whether its holding was to be applied retroactively.[8] The answer for this circuit has been supplied: Johnson does apply retroactively. See Williams v. Phil Rich Fan Manufacturing Co., Inc., 552 F.2d 596 (5th Cir. 1977), Dupree v. Hutchins Brothers, 521 F.2d 236 (5th Cir. 1975).
 
 
 11
 Under retroactive application of Johnson, the one year Florida limitation was a bar to the § 1981 claim against both the International and Local Lodge 570.
 
 II. THE TITLE VII CLAIMS
 
 12
 The collective bargaining agreement (and prior agreements) under which Daniel was given preference in filling the mechanic position at St. Petersburg in August 1972, was entered into between the International Union and Greyhound Motor Lines-East, a Division of Greyhound Motor Lines, Inc. Local Lodge 1831 was the local union designated to represent Greyhound's employees at its St. Petersburg, Florida maintenance facility, until its membership was merged into Local 570 in June 1973. Prior to that time, Local 570 was a stranger to Greyhound and to its St. Petersburg operation. (Findings of Fact of trial court Nos. 8 and 9, App. 251).
 
 
 13
 Local Lodge 570, along with the International and Greyhound, was named as a defendant in the court suit below. Local 1831 was not sued. Both the original complaint and the amended complaint alleged in Paragraph XII that:
 
 
 14
 "On January 9, 1973, Plaintiffs filed a complaint with the Equal Employment Opportunity Commission alleging violations by the Defendants union of Plaintiffs' rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. 2000 (2000e) et seq. On or about July 26, 1973 Plaintiffs were advised that the charges were still pending investigation by the Commission, but that since 180 days had elapsed from the filing of the charges, Plaintiffs were entitled to initiate a civil action in the United States District Court as provided by 42 U.S.C.A. 2000e-5(f) of the Act." (underscoring ours).
 
 
 15
 The Answers of both Local Lodge 570 and the International Union joined issue as to these averments:
 
 
 16
 "12. The allegations of Paragraph XII are denied."
 
 
 17
 Neither Union defendant receded from this position throughout the course of subsequent pleadings and pretrial statements of position. The point was reiterated by each on motions for directed verdict at the close of the trial, supported by detailed written memoranda, asserting plaintiff's failure to prove jurisdiction under Title VII by proof of timely filing before the EEOC of the charges of discrimination asserted in the lawsuit. On this basis each asserts that since the sole proof at trial of filing of the contents of the claimed charges before the EEOC was the "Right to Sue" letters introduced in evidence, jurisdiction was never established and the respective motions for directed verdicts were due to be granted by the trial court.
 
 
 18
 We agree that the allegations of Paragraph XII were jurisdictional, and that if plaintiff Shaw did not discharge his burden of proving them, the complaint was due to be dismissed for want of jurisdiction.
 
 
 19
 The filing of a charge with the EEOC is one of two conditions precedent or jurisdictional prerequisites to suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Beverly v. Lone Star Lead Const. Corp., 437 F.2d 1136, 1139 (5th Cir. 1971); Miller v. International Paper Co., 408 F.2d 283, 291 (5th Cir. 1969).
 
 
 20
 The other jurisdictional prerequisite is proof of receipt of the statutory notice of right to sue. Beverly v. Lone Star Lead Const. Corp., supra; Miller v. International Paper Co., supra; Carr v. Conoco Plastics, Inc., 423 F.2d 57 (5th Cir. 1970).
 
 
 21
 The only proofs plaintiff offered at trial were the filing of the two "Right to Sue" letters, one as to International Association of Machinists, and the other as to Local 1831, not as to Local 570. Plaintiff did not testify as to filing any charge with EEOC, or when he had filed any charge, or the subject of the discrimination asserted (assuming that charges were filed).
 
 
 22
 Both Union defendants were entitled to directed verdicts or some equivalent relief for failure to establish jurisdiction before the district court. The district court held as a matter of law that:
 
 
 23
 The failure of defendant (1) International or (2) Local 570 to object to the introduction of a "right to sue letter" establishes that the jurisdictional prerequisites to bringing this action under 42 U.S.C. 2000e, et seq., were established as to them.
 
 
 24
 Conclusions of Law, 3, App. p. 257.
 
 
 25
 This was an acceptance by the district court of the plaintiff-appellant's position below (and before us) that "a prima facie case of the Court's jurisdiction over the subject matter and parties was made when the Plaintiff introduced into evidence his notice of right to sue letter from EEOC as to both defendants and the business manager testified that Local 570 assumed the responsibility for the business affairs of Local 1831 when it merged with said local." Plaintiff's memorandum filed November 22, 1974, Vol. I, Appendix 228, 231-32.[9] The "Right to Sue Letters" were introduced in evidence as Plaintiff's Exhibits 52 (as to the International) and 53 (as to Local 1831). While no objection was made, counsel for the Unions reserved objections as to the materiality of the exhibits.[10] The slight difference in the facts as to the two Union defendants[11] is of no import. Jurisdiction over neither defendant under Title 42, U.S.C. § 2000e et seq. was ever established. As courts of limited jurisdiction, neither the district court nor this court is empowered to make any assumptions as to the filing or the contents of any complaints with the EEOC.
 
 
 26
 Our holding means that the judgments below are affirmed, albeit on different grounds than those relied on by the district court.[12]
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 Ula Cutliff and Jack Fletcher, whose claims were dismissed with prejudice during the trial. They have not appealed
 
 
 [2]
 The complaint also named Max M. Daniel, a white member of the Union and a Greyhound employee, as a defendant. Daniel's motion for directed verdict was granted at the close of the evidence at trial. This ruling is not attacked on appeal
 
 
 [3]
 Daniel and another white employee, Johnston, bid for the position. Shaw did not, but had he done so, he would have been unsuccessful, as the trial judge held, and the parties agree
 The contract provided that classification seniority would build only for the time the employee was in the classification. When Daniel was furloughed in October, 1971, since he had no seniority in any other classification, he worked elsewhere, so that under the contract his seniority as mechanic continued to build. Both Johnston and Shaw had seniority over Daniel as mechanics when they were furloughed. However, when laid off each of them "bumped down" to a lower position, Johnston as a fueler, Shaw as a bus cleaner, so that their seniority as mechanics remained the same as it was when they were laid off, and thus Daniel was senior to each of them when the new job opened in August 1972. The trial court found that as of that date Shaw had seniority as a mechanic of 8 years and 9 months, Johnston of 8 years and 8 months, and Daniel of 9 years and one month.
 
 
 [4]
 Florida Statutes § 95.11(7)(b) as it appeared prior to amendment January 1, 1975 read as follows:
 "95.11 . . . Actions other than those for the recovery of real property can only be commenced as follows:
 (7) WITHIN ONE YEAR.
 (b) Suits for the recovery of wages, overtime, or damages and penalties accruing under laws respecting the payment of wages and overtime."
 
 
 [5]
 We reject as baseless Shaw's contention that the claimed discrimination was a "continuing violation". The effect of the violation continued, but clearly the violation itself, if it occurred, was on or before the date of the award of the position to Daniel, August 15, 1972. See Guerra v. Manchester Terminal, 498 F.2d 641 (5th Cir. 1974)
 
 
 [6]
 Johnson v. American Railway Express Agency, Inc., 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)
 
 
 [7]
 The question of tolling is important here. According to Shaw's Amended Complaint, Title VII violation charges were filed before the EEOC on January 9, 1973, against the Union defendants. This date was within the one year Florida limitation period and within the 180 day time limit for filing charges, § 2000e-5. Actually, no charges were ever brought by Shaw against Local 570 before the EEOC. That Local represented no bargaining unit of Greyhound employees, at St. Petersburg or elsewhere until Local 1831 was merged into it in June of 1973, after the events charged in plaintiff Shaw's complaint, but before suit was filed
 The charges were pending before the EEOC when suit was instituted October 23, 1973. "Right to Sue" letters as to the International and as to Local Lodge 1831 (but not as to Local Lodge 570) issued by EEOC July 26, 1973 were received in evidence at trial without objection under stipulation. This subject is dealt with more fully in the text, Part II of this opinion, infra.
 
 
 [8]
 Other than inferentially, by its application of the no tolling rule to the plaintiff-petitioner before the Court, Johnson
 
 
 [9]
 The argument was elaborated as follows:
 "The Defendants argue that the filing of a charge with EEOC is a jurisdictional prerequisite to filing a suit under 42 U.S.C. 2000e. The Plaintiff agrees with this statement. However, the question then becomes what proof is necessary to establish a prima facie case that the charges were filed with EEOC.
 Under 42 U.S.C. 2000e et. seq., EEOC is given the responsibility to determine whether the charge is timely or that local and state remedies have been exhausted. Thus the notice of right to sue letter from EEOC is prima facie evidence that a timely charge was filed with EEOC. If the defendants wish to rebutt this prima facie case they have the responsibility of coming forward with additional evidence.
 Furthermore, in this case the defendants with the Courts approval in effect stipulated that the Plaintiff could establish a prima facie case of jurisdiction under 42 U.S.C. 2000e when they let the Plaintiff introduce into evidence the notice of right to sue letters without establishing a foundation for their introduction. To say otherwise would make it impossible for opposing counsel to stipulate to the admission of evidence, if the facts essential to the admissibility of the evidence is not admitted. In this case, if the letter had been stipulated into evidence, plaintiff would have showed that he filed charges with EEOC and that after 180 days he applied for and received his notice of right to sue letter.
 Local 570 further argues that no charges were filed against it with EEOC and it is not liable for the acts of Local 1831.
 It is true that no charge was filed against Local 570, but a charge was filed against Local 1831 and pursuant to an agreement between the two Locals they merged, and Local 570 assumed the responsibility for the business affairs of Local 1831. Thus their argument that they are not liable is of no moment. If it were otherwise, the courts jurisdiction would be frustrated, if all a defendant had to was merge with another organization."
 Plaintiff's Memorandum of November 22, 1974, Vol. I, Appendix 232.
 
 
 [10]
 The following colloquy took place when the right to sue letters were offered in evidence:
 "MR. MILTON: Yes, sir, Plaintiff's Exhibit 49. And I am adding two new exhibits which are not on my list, Exhibits 52 and 53.
 No. 52 is a Notice Of Right To Sue, a letter from the EEOC, as it relates to the International Union.
 THE COURT: Yes sir.
 MR. MILTON: And Plaintiff's Exhibit 53 is a Notice. Notice Of Right To Sue as to the Local Lodge 1831.
 THE COURT: Are there any objections?
 MR. SIZEMORE: (Counsel for Greyhound) No objection.
 MR. HAMILTON: (Counsel for the Unions) No objection, Your Honor, with reservations as to materiality.
 THE COURT: Each is received.
 (Thereupon Plaintiff's Exhibits 49, 52, and 53, for identification were received and filed in evidence.)
 THE COURT: Certainly Exhibits 52 and 53 are material or relevant. The Right To Sue
 MR. HAMILTON: Your Honor, that may be. We will have to see.
 THE COURT: Well all right. I have allowed the amendment but we will see what the effect of it is."
 Vol. II, Appendix, pages 415-416.
 
 
 [11]
 The International was named in a "Right to Sue" letter, while Local 570 was not
 
 
 [12]
 We note but reject as baseless the appellant's earnest contention at oral argument that the appellees are bound by the grounds of decision relied upon by the district court. A judgment may be defended on any ground consistent with the record, even though rejected by the trial court. Here, where the trial court found against the appellant on the merits, we conclude that he should not have reached the merits but should have disposed of the claims in favor of the defendants on the issues of limitations and lack of jurisdiction. See, e. g. Brown v. Allen, 344 U.S. 443, 459, 73 S.Ct. 397, 408, 97 L.Ed. 469 (1963); Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937); Sellars v. Estelle, 536 F.2d 1104, 1105 (5th Cir. 1976); James v. Reese, 546 F.2d 325, 327 (9th Cir. 1976); Spokane County v. Air Base Housing, Inc., 304 F.2d 494, 497 (9th Cir. 1962); United States v. Commonwealth of Pennsylvania, 533 F.2d 107, 110, n.7 (3rd Cir. 1976); Cook v. Hirschberg, 258 F.2d 56, 57 (2d Cir. 1958); Wright, Law of Federal Courts, 2d Ed. (1970) p. 468